CREWS v. WILLIS et al.

No. 31027. May 29, 1945.

*159 P. 2d 251.*

Otjen & Carter, of Enid, for plaintiff in error.

Coldiron & Coldiron, of Enid, for cross-petitioner Charley Crews.

W. E. Crowe and M. F. Priebe, both of Enid, for defendants in error.

PER CURIAM. This is an action brought by Everett Crews against Dan Willis et al. to dissolve a trust estate, for an accounting and the appointment of a receiver. The defendant Ralph Crews was made trustee under the trust agreement and the defendants Mary Willis. nee Crews, Amy Tresner, nee Crews, Ralph Crews, Charley Crews, and Robert Crews and the plaintiff were the beneficiaries. Defendant Ralph Crews filed his account and answer agreeing to the dissolution of the trust.

Charley Crews by answer and cross-petition attacked various items of the account and asked that the trustee's account be surcharged. The other defendant beneficiaries of the trust by answer asked that the account of the trustee be approved. Defendant Robert Crews and Gerald Tresner by a cross-petition claimed compensation for services rendered the trustee.

Plaintiff assailed and attacked various items of the trustee's account.

The trust agreement was executed October 20, 1930. The res consisted of $700,000 in cash and bonds belonging to the above-named beneficiaries, who were heirs of their deceased father. These beneficiaries had inherited from their father certain land in Garfield county on which there were producing oil wells. Litigation arose between the heirs relative to the oil lease on the land between them and the Sinclair Oil & Gas Company. The matter was finally compromised and settled and the Sinclair Oil & Gas Company paid to each of the heirs the sum of $34,166.66. During the time this litigation was pending the sum of approximately $700,000 had accumulated, most of which was invested in government bonds and placed for safekeeping in the Farmers State Bank of Garber. After this settlement was made it was discovered that these bonds at the bank had been embezzled.

B. A. Garber and Clyde M. Pulse, connected with the bank, agreed to indemnify the heirs against such loss and entered into an agreement in which they conveyed to R. L. Williams and Ralph Crews, as trustee, certain assets which it was then thought would sufficiently indemnify the heirs. Among the property conveyed was 200 shares of capital stock of the Washoma Petroleum Company, numerous shares of stock of Garber Bros., Inc., and Garbers Refining Company and certain real estate. All of these assets, however, were heavily encumbered. These assets, together with contributions made by each of the beneficiaries in the sum of $34,166.66, constituted the corpus of the trust. These advances were made to cover expenses incident to assembling and disposing of the assets. The trust agreement recited that the trust was created for the purpose of salvaging the assets conveyed to the Crews heirs by Garber and Pulse. The trust agreement further provided:

"For the purpose of protecting the rights, interests, and property of first parties and each of them, and for the specific purpose of using the funds, moneys, or other property jointly owned and possessed by them in the recovery, protection, and preservation of the above-mentioned converted and dissipated trust funds, and for the preservation and protection of the joint estate of first parties, they and each of them hereby jointly and severally designate, select and empower said Ralph Crews to act and serve as Trustee, and said Ralph Crews does by these presents accept said trust, and hereby faithfully agrees to perform all of the obligations of 'Trustee' for first parties, and to do any and everything that in his judgment or in the judgment of all or a majority of first parties is deemed necessary, advisable, or proper for the recovery of the aforesaid trust funds, the preservation and safekeeping thereof, and hold the same for the joint benefit of all of the first parties until the same is by the unanimous action, or by action of a majority, of said first parties, ordered distributed; and when such distribution is so ordered, said Trustee hereby agrees, and binds himself to distribute all the funds or property then in his hands, or such part thereof as may be ordered distributed."

In addition to the above assets at the time this trust agreement was executed, there was then on deposit under certificate of deposit in the Farmers State Bank of Garber the sum of $62,500. The bank examiner, however, did not permit any of these sums to be withdrawn and demanded and obtained a written agreement from the beneficiaries that no part of said sum would be withdrawn for a period of six months. This instrument was signed by each beneficiary. At the expiration of the six-month period the bank examiner demanded that a new agreement be executed continuing in force the old agreement. A majority of the beneficiaries in compliance with this demand then agreed to surrender the certificate of deposit to the bank and have executed to them in lieu thereof shares of stock in the bank. This agreement was consummated and each beneficiary was issued 63 1/3 shares of stock and the certificate of deposit was canceled. Defendant Charley Crews, however, was not present at this meeting and at no

time consented to the canceling of the certificate and taking stock. He did not discover that this stock had been issued to him until sometime afterwards. He was at that time out of the state. After discovering that the stock had been issued to him he protested and assigned the stock to Robert Crews, but no record of same had been made on the stock books of the bank and Robert Crews denied that he had ever acquired such stock.

In March, 1932, the bank examiner again examined the bank, and on the 20th day of March, 1932, made a demand of the beneficiaries of the Crews estate that the sum of $90,000 be immediately deposited in the bank for the purpose of retiring worthless papers, and threatened to close the bank unless such sum was deposited. This demand was made on Sunday and coupled with the ultimatum that unless the deposit was made by Monday morning the bank could not open. Defendant Robert Crews, who was a vice president and active manager of the bank, immediately arranged a meeting with all the beneficiaries. After prolonged discussions a majority of the beneficiaries agreed to deposit $60,000 of the money of the estate then in the bank in order to comply with the demand of the bank examiner, and one of the depositors arranged to make the deposit of the additional $30,000, which sums were then deposited and the bank was opened on Monday morning, the 21st of March. The plaintiff, Everett Crews, and defendant Charley Crews, however, vigorously protested against making such deposit and specifically notified and advised the trustee that no portion of their interest in such fund could be so used.

It was also agreed between the bank examiner and the stockholders of the bank that upon the deposit of the sum of $90,000 the capital stock of the bank, which was then $50,000, would be reduced to $25,000, which was accordingly done. The bank continued to operate until March, 1933, when it was closed under the Federal Moratorium Bank

Law and never permitted to reopen. It was finally liquidated and the depositors were. paid 55 per cent of their deposit.

The plaintiff, Everett Crews, and defendant Charley Crews now ask that the trustee's account be surcharged for their use and benefit with 1/6 interest, or $10.000 each, in this deposit; their contention being that the trustee had no authority under either the trust agreement or at law to so use their interest in this deposit.

It is the contention of the trustee that since he had the consent of a majority of the beneficiaries to use the deposit for this purpose, he was justified both under the trust agreement and the law in using the deposit for that purpose. The trial court sustained this contention. This ruling is assigned as error. We will first consider this question as it related to the plaintiff, Everett Crews. We do not agree with the contention of the trustee that the consent of the majority of the beneficiaries authorized him either under the trust agreement or the law against the protest of the plaintiff to so use any portion of his interest in the $60,000 deposit. The trustee, however, further contends that plaintiff suffered no loss by reason thereof, and in order to establish this contention has proven the following state of facts: that plaintiff was the owner of 63 1/3 shares of stock in the bank; that if the deposit had not been made the bank would have been closed on Monday morning, March 21st, and if the bank had closed on that day, the depositors would have been paid 32 per cent of their deposit, and in that event plaintiff on his interest in the deposit would have drawn a dividend of $3,200; that his stock liability would have more than offset this deposit; that after the .bank was liquidated plaintiff was assessed a liability on his stock of $3,166.66, but this assessment was based on the reduced capital stock of the bank and on 32 shares instead of 63 shares; that had the bank closed on the morning of March 21st the assessment of his stock would have been in excess of

$6,000 against a dividend of $3,200. We are inclined to agree with the contention of the trustee in this respect. Plaintiff received a benefit in the nature of a reduced stock liability by virtue of the deposit having been made and on the whole suffered no loss by the transaction. It certainly devolved on plaintiff to show that he had suffered some injury before he could ask that the trustee's account be surcharged for his use and benefit. In 64 C.J. 662 it is said:

"The claim against the trustee for the breach of trust is in the nature of a general demand for damages; and an action cannot be maintained unless the cestui que trust can show that he had been deprived of a benefit or sustained an injury in consequence thereof. The measure of the trustee's liability in such cases ordinarily is, at the option of the cestui que trust, the amount actually lost by the breach or the amount which the trustee has gained thereby."

We therefore conclude that the trial court committed no error in refusing to surcharge the trustee in this respect for the use and benefit of plaintiff.

A different question, however, is presented as to defendant Charley Crews. He had no interest in the bank and owned no bank stock. The trial court should have surcharged trustee's account for his use and benefit, not, however, for the full amount of the $10,000 claimed, but only for the amount he actually lost by reason of the deposit having been used by the trustee as demanded by the bank examiner. If the bank had closed on that date, defendant would have received a $3,200 dividend. We therefore conclude that the trial court should have surcharged trustee's account with the sum of $3,200 for the use and benefit of defendant Charley Crews. Both plaintiff and this defendant, however, contend that the bank was insolvent at the time the trustee first deposited funds in the bank; that he knew the same was insolvent, and that he should be held liable for having so deposited the funds and not withdrawing the same after it became apparent that the bank was hopelessly insolvent. This is a correct proposition as

a general rule, but we do not think it can apply here. The bank was selected as a depository by the consent of all the beneficiaries and was continued as such depository up to the time the bank was closed with the consent of all the beneficiaries with the probable exception of the defendant Charley Crews, but his demand that the funds be withdrawn from the bank came too late to make withdrawals of any consequence. In these circumstances the trustee cannot be held liable for any loss accruing to the estate because of the financial condition of the bank where his deposits were made and kept. 65 C.J. 663; In re Estate of Isaac Miller, Deceased, 333 Pa. 116, 2 Atl. 2d 370, 128 A.L.R. 1, and cases cited in notes.

Both plaintiff and defendant Charley Crews contested the payment of $10,000 made to R. L. Williams. This debt was created prior to the time the trustee was appointed and was for services rendered the Crews heirs in the compromise of the litigation heretofore detailed between the heirs and the Sinclair Oil & Gas Company. There is no question raised as to a liability. Plaintiff and defendant Charley Crews raise some question as to the amount. Their contention, however, is that the trustee had no right to pay the same for the reason that it was a charge against the beneficiaries individually and not a charge against the estate. The evidence shows that the payment was made with the consent of the majority of the beneficiaries. We think the evidence also conclusively shows that it was a valid claim. This claim certainly was a charge against the assets of the beneficiaries in the hands of the trustee and was properly paid by him.

It is also contended by these parties that the trial court erred in allowing a trustee's fee and counsel fee for trustee's counsel. The trial court allowed a fee to the trustee in the sum of $10,050 and to his counsel in the sum of $2,000. In this respect it is first contended that the trustee had forfeited his right to fees for his services because of mismanagement and maladministration of the

trust estate and also, objects to paying counsel fee for the same reason. We do not agree. It is of course well established that a dishonest or unfaithful trustee forfeits all right to compensation. The mere fact, however, that the trustee may make some honest errors of judgment in the execution of his trust or may in some respect misconceive his authority under the trust agreement or the law and performs an occasional act beyond his authority from which a loss results does not necessarily deprive him of the right to compensation. The same is true as to counsel fees. 65 C.J. 929. It is also contended that the addendum to the trust agreement prohibits the payment of trustee's fee. There is in the addendum agreement a provision for the allowance of $160 per month trustee's fee, providing the rest of the beneficiaries are paid the same amount. The agreement further provides for an equalization of the amount that each beneficiary shall draw and that one shall draw no more than any other. It is the contention of the plaintiff and this defendant that since the other beneficiaries have not drawn an equal amount of $10,000 which the court allowed the trustee, the trustee was therefore not entitled to such allowance.

This addendum agreement, however, has never been acted upon by the parties; no payments have ever been made thereunder. The trial court found that it was agreed among all of the beneficiaries that the agreement was not workable and that it was abandoned by mutual agreement of all of the parties. This finding is sustained by the great weight of the evidence. The trial court ignored the addendum, and we think properly so.

The trial court also allowed defendant Robert Crews compensation of $25,000 for services alleged to have been rendered the trustee. This allowance is also contested. The protest as to this item should have been sustained. Robert Crews was at no time employed by the trustee to render any service to the trust estate. He claimed compensation for services rendered the Washoma Petroleum Company. This company was taken over and operated by the trustee. He was a member of the board of directors of that company and attended its meetings. Washoma Petroleum Company at no time agreed to pay him compensation for services rendered the company. He at no time made any claim for compensation from that company, and testified that he only made the claim for the reason that he had discovered that plaintiff, Everett Crews, was paid a salary while connected with the company. During part of the time he was active vice president and manager of the Farmers State Bank of Garber and was drawing a salary from the bank for his services. He devoted very little time to the Washoma Petroleum Company and performed no service of any consequence to either the trustee or the petroleum company. The trial court was in error in allowing this claim.

The court also allowed Gerald Tresner compensation in the sum of $4,275 for services performed for the trustee. The trustee employed him and he performed a valuable service for and on behalf of the estate. No question has been raised as to the reasonableness of the amount allowed. This claim was properly allowed.

It appears that during the progress of the trust various beneficiaries had withdrawn for their personal use certain amounts. The amounts drawn were not equal. It is contended by plaintiff and defendant Charley Crews that interest should have been charged against each beneficiary on the amount of withdrawals. In order to sustain this contention they rely on the addendum clause of the agreement which provides that interest shall be charged on emergency withdrawals. Since we have held that the addendum clause to the agreement has been abandoned, and no other authority is cited to sustain this contention, we hold that there was no error in the ruling of the court in this respect.

Defendant Charley Crews further

raises objection to a charge made against him in the sum of $591.67 which is charged to his account as a withdrawal. This charge constitutes 1/3 of a payment of the trustee of $1,775 on a note executed to Metcher. The Crews Motor Company had borrowed $2,500 from Metcher. The Crews Motor Company consisted of Charley Crews, Robert Crews, Ralph Crews, R. L. Williams, and others. The note had been paid down to $1,775. This was paid by the trustee and 1/3 thereof charged to the account of each Ralph Crews, Robert Crews, and Charley Crews. It is contended by defendant Charley Crews that he was not obligated for any part of this obligation and that the charge was therefore erroneous. The weight of the evidence is to the contrary. It was, however, discovered at the trial that R. L. Williams had paid to the trustee $1,000 on this obligation reducing the balance to $775, and that the charge should have been 1/3 of this amount to each instead of 1/3 of $1,775. The charge as to this item should be corrected.

In addition to these items the plaintiff, Everett Crews, contested a loan of $7,500 made to O. O. Owens, which has never been collected and asks that the trustee be surcharged with this item. It appears that O. O. Owens was employed by the trustee to make an appraisement of assets included in the trust agreement; that while so employed he requested a loan in the sum of $7,500. This loan was made with the consent of the majority of the beneficiaries. The trustee afterwards sought to collect this loan. Owens refused to pay the same on the theory that the estate owed him in excess of that amount for services rendered and threatened to counterclaim for such amount in the event of suit. The trustee consulted with the beneficiaries as to the advisability of filing suit. The majority agreed that it would not be advisable to file suit, and no further effort was made to collect. In these circumstances there was no error in refusing to surcharge trustee as to this item.

At the time the beneficiaries took stock in the Farmers State Bank of Garber there was also issued to a Mr. Moorehead certain shares of stock for which he was charged $1,250. This amount was never paid by Moorehead, and it is contended by plaintiff that the trustee was guilty of negligence in not collecting this sum and that the same should be charged to his account. This obligation was not an asset in the hands of the trustee. The obligation was to the bank and not to the trust estate. There was therefore no error in refusing to surcharge trustee's account with this item.

There was also a loan made to the Farmers State Bank of Garber which has never been collected. Plaintiff contends that trustee was guilty of negligence in failing to make this collection and asked that his account be surcharged with such item. The trial court found that the trustee was guilty of no negligence in this respect, and in this conclusion we concur.

Prior to the time the trust was created the Crews heirs loaned to the Crews Motor Company the sum of $10,000. A note was executed by that company and signed by Robert Crews, Ralph Crews, and Charley Crews. Nothing has ever been paid on this note and plaintiff asserted that the trustee was guilty of negligence in failing to collect this note and that his account should be surcharged with this item. This note was executed in 1922 and was a demand note. The Crews Motor Company was out of existence at the time the trust agreement was executed. At the time it was executed it was delivered to Laura Crews, an aunt of the Crews heirs. She has had possession of it ever since. The note never came into possession of the trustee and was barred by limitation before the trust agreement was executed. The note was lost and could not be produced at the trial. There is testimony to the effect that since it was barred by limitation it was abandoned and wiped out at the time of the execution of the trust. In these circumstances we hold there was no error in refusing to surcharge trustee's account with this item.

It also appears that plaintiff as president of the Washoma Petroleum Company was paid a salary in the sum of $2,380. This salary was paid upon agreement of the board of directors of that company. The trial court treated this salary as a withdrawal from the trust estate and added the same to the amount of his withdrawals. This ruling is assigned by plaintiff as error. We think this assignment well taken. The salary was paid by the Washoma Petroleum Company on the recommendation and agreement of its board of directors. Plaintiff devoted his time to that company and neither the trustee nor any of the beneficiaries have a right to challenge this payment.

Plaintiff also assigns as error the ruling of the court in refusing to allow him, out of the trust estate, a reasonable amount for payment of counsel fees. There was no error in this respect. Plaintiff did not bring the action for the purpose of protecting and preserving the trust estate, nor was it brought in the interest of the beneficiaries generally; it was brought to protect and preserve his own interest, and is in the nature of a personal action against the trustee to recover damages because of an alleged breach of the trust agreement. He was not therefore entitled to counsel fees. 65 C.J. 722.

It·is further contended that the trial court erred in refusing to discharge the trustee and to appoint a receiver pending the liquidation of the trust. This was a matter largely within the discretion of the trial court. We can see no abuse of discretion in refusing to grant this request. The court committed no error in this respect.

Subsequent to the filing of this appeal an action was filed in the court below for appointment of receiver to take charge of the property now in possession of the trustee and involved in this case. The trustee filed in this court an application for restraining order to restrain the court from interfering with the possession of the property in his hands pending the appeal. The application is based on the theory that the court below was without jurisdiction to interfere with the possession of the property in his hands while the appeal was pending and that this court has jurisdiction to issue such order to protect its jurisdiction. Since, however, this court has now disposed of the main case, the question raised by the application becomes moot. The application is therefore dismissed.

The judgment of the trial court is reversed and the cause remanded, with directions to enter judgment in accordance with the views herein expressed.

HURST, V.C.J., and RILEY, BAYLESS, WELCH, CORN, and DAVISON, JJ., concur. GIBSON, C.J., and OSBORN, J., not participating.