Allen Hales BUCK, Plaintiff in Error,

v.

K. CAVETT and The First National Bank & Trust Company of Oklahoma City, Oklahoma, Trustees under the Last Will and Testament of W. T. Hales, Deceased, Defendants in Error.

No. 38654.

Supreme Court of Oklahoma.

June 21, 1960.

Felix, Griffin, Bowman, Templin & McIntyre, Oklahoma City, Okl., for plaintiff in error.

Lytle, Johnston & Soule, Oklahoma City, Okl., for defendants in error.

WILLIAMS, Vice Chief Justice.

Allen Hales Buck, hereinafter referred to as plaintiff, instituted the action in the trial court to compel K. Cavett and The First National Bank & Trust Company of Oklahoma City, trustees of a trust created by W. T. Hales, deceased, hereinafter referred to as defendants, to pay plaintiff a reasonable monthly sum from the income of such trust for plaintiff's support and maintenance.

The trust involved herein was created by the last will and testament of W. T. Hales, deceased, for the benefit of trustor's five children. Plaintiff, a grandson of the trustor, is a son of a deceased beneficiary.

The applicable provision of this trust is as follows:

"Whenever any of my children shall have died leaving surviving him or her any child or children, then I authorize, empower, and direct my executors and said trustees to make payments from the income of my estate during administration, and of said trust estate thereafter, at such times and in such amounts and to such persons as in the exercise of a wise discretion and the best judgment of said executors or trustees they shall deem reasonably necessary, just and proper for the care, maintenance, support and education of each such grandchild of mine, including a highschool and college education to each one who will take it. * * *"

The trial court denied the relief prayed for, finding that the trustees have not abused the discretionary powers conferred upon them by such trust. Plaintiff appeals from such judgment and order overruling motion for a new trial.

Plaintiff, in this appeal, contends that the judgment of the trial court is not supported by the evidence, is contrary to the evidence, ignores the undisputed medical testimony, and is contrary to law.

The medical testimony, given by a psychiatrist, was, in part:

"Q. The defense in this case has filed an answer in which they say he just should be made to buckle down and go to work. Now, what is your view of that? Can that be done? And this boy do any good? A. I don't know how it can be carried out. It is a great idea, I had it myself, I hoped to rehabilitate him, and soon found out the seriousness of the long-standing nature of—chronic nature of his illness, and I personally cannot feel that this boy, in line with what we know, that he is 25, he has never had anything to my knowledge resembling a stable job adjustment, nor has he ever really had a stable relationship with any one or or more persons. His character, his character defects, I might say, are, so well fixed by now that at least my profession, psychiatry, which has to do mostly with these people, we don't have the answer as to how to treat these people successfully. At the same time they cannot be legally incarcerated in a hospital or in a jail unless some offense has been committed. So far as his being able to work, either solitarily or in a group or in any kind of maybe even a protected situation, I can't be anything but very discouraging about it.

\* \* \* \* \* \*

"A. Well, looking at people with this same kind or similar·kind of disorder in their middle years or later in life, not infrequently they come to some kind of violent end, either at

their own hand or someone else's hand because they constantly place themselves in jeopardy in their relationships with other people. Well, this is a probability. Otherwise, if that does not happen, he will likely continue to be essentially what he is now. He will migrate around, and establish relationships of very short duration, * * *. He is unable to be self-supporting, in my opinion, because his disorder is so profound, and were he given money to do with as he pleases, he would, of course, squander it and not use it in any sort of constructive way.

* * * * * *

"A. I have never seen anyone ever approach this man's disorder that has ever been able to be self-sustaining.

* * * * * *

"A. * * * I consider it an illness, malignant as it is, and difficult as it is to cope with; * * *.

* * * * * *

"A. I don't know of any institutions that he will stay in willingly long enough to even make a dent in his condition. This is part of the difficulty. We think of treating these people in a hospital setting over a matter of years, not months, and our brief experience at the Veterans Hospital with him shows that he becomes so restless and anxious and so tense, in other words, it is part of his clinical condition, that he is unable to stay put long enough to be benefitted by this treatment, so institutional care—on the other hand, legally, he cannot be committed, that is, against his own wishes or his own will. * * *"

In short, the psychiatrist appears to us to be of the opinion as an expert that plaintiff is mentally and emotionally incompetent to provide a livelihood for himself by his own efforts.

It is also uncontradicted that the trustees, defendants, are willing to pay the expenses of psychiatric treatments if paid direct to the doctor or institution.

Plaintiff, at the time of this request for support and maintenance and of the trial, was receiving the sum of $145 per month from another trust created by the same trustor.

The argument of plaintiff is that his condition of mental and personality illness and disorder is such that he is unable to earn a living. The unspoken analogy is that were plaintiff to be so disabled, physically, by disease or accident, the trustees might be required, under the terms of the trust, to pay for his support, maintenance and medical expenses; that plaintiff's mental and emotional maladjustment is just as severe and disabling as a physical disease or handicap; that the refusal of the trustees to so provide is arbitrary and such an abuse of their discretion that the trial court erred in not ordering the trustees to pay plaintiff periodically an income for his living expenses.

■ After carefully reviewing the record we do not believe that the judgment of the trial court is against the clear weight of the evidence in so far as it sustains the discretionary powers of the trustees in refusing to pay the monthly sum requested, $750. Mock v. Stricklin, Okl., 315 P.2d 247.

■ However, it is manifest from the above provision of this trust that the trustor intended that children of deceased beneficiaries (trustor's grandchildren) should not want for those things reasonably necessary to their care, maintenance and support, which, but for the death of such beneficiary, would be assured by this trust. In Stallard v. Johnson, 189 Okl. 376, 116 P.2d 965, we held:

"Where a trust is created for the purpose of providing for the suitable care and maintenance of the beneficiaries at the discretion of the trustee the discretion so vested is not an arbitrary one which will permit the trustee to defeat the purposes of the trust under the guise of its exercise but is one which must be exercised honestly,

fairly and reasonably to accomplish the purpose of the trust.

"The courts in the exercise of their equitable jurisdiction have the power to safeguard the rights of the cestui que trust and to compel performance by the trustee of the duties of the trust."

■ In view of the medical testimony in this case and the provisions of the will of Mr. Hales, supra, we believe that the trustees in furtherance of and in compliance with the terms of this trust, should be directed by the trial court to make reasonable provision for suitable living quarters in the amount of $50 to $60 per month, and a reasonable weekly allowance in the approximate amount of $18 to $22 for food, medical care and other necessities, in addition to the $145 per month he receives from the other trust, under such arrangements for the payment therefor as the trial court may deem for the best interests of the parties.

Plaintiff further contends that the trial court should have directed the trustees to pay his attorney's fees out of trust funds, citing Stallard v. Johnson, supra. In Crews v. Willis, 195 Okl. 475, 159 P.2d 251, at page 258, we adopted the rule:

"Plaintiff also assigns as error the ruling of the court in refusing to allow him, out of the trust estate, a reasonable amount for payment of counsel fees. There was no error in this respect. Plaintiff did not bring the action for the purpose of protecting and preserving the trust estate nor was it brought in the interest of the beneficiaries generally; it was brought to protect and preserve his own interest, and is in the nature of a personal action against the trustee to recover damages because of an alleged breach of the trust agreement. He was not therefore entitled to counsel fees. 65 C.J. 722."

■ By reason of the foregoing rule, which is the majority view, see annotation in 9 A.L.R.2d 1132, we affirm the judgment of the trial court in so far as it denies plaintiff's request that defendants be required to pay plaintiff's attorney's fees in this action.

Affirmed in part and reversed in part with directions to proceed in a manner not inconsistent with the foregoing conclusions.

DAVISON, C. J., and WELCH, JOHNSON, BLACKBIRD, JACKSON and IRWIN, JJ., concur.