Marcia L. MOORE, Joseph C. Campbell, Jr., and Allen Hales Buck, Plaintiffs in Error,

v.

K. CAVETT and The First National Bank and Trust Company of Oklahoma City, as Trustees of the W. T. Hales Estate Trust, Defendants in Error.

No. 38989.

Supreme Court of Oklahoma.

Nov. 28, 1961.

Rehearing Denied Jan. 30, 1962.

**226**

Byrne A. Bowman, Felix, Griffin, Bowman, Templin & McIntyre, Oklahoma City, for plaintiff in error, Allen Hales Buck.

John H. Kennedy, Oklahoma City, for plaintiffs in error Marcia L. Moore and Joseph C. Campbell, Jr.

Cochran, Dudley, Fowler, Rucks, Baker & Jopling; Lytle, Johnston & Soule, Oklahoma City, for defendants in error and cross-petitioners in error.

HALLEY, Justice.

This was an action by the trustees of a testamentary trust for instructions concerning the erection of a building on trust real property consisting of two 25 foot lots in downtown Oklahoma City. The trustees attached to their petition a copy of the proposed construction contract and a copy of the proposed lease contract with the prospective lessee of the new building. Two of the contingent beneficiaries (remaindermen) filed motions denying jurisdiction and they together with one other contingent beneficiary filed answers objecting to the erection of a building under such a plan. The trustor's four children, who were the beneficiaries actually receiving distributions from the trust estate at the time of the filing of the petition, filed a joint answer in which they joined with the trustees in requesting that the instructions prayed for in the petition be approved.

The trust in question was created by the last will and testament of W. T. Hales, deceased, for the benefit of the trustor's five children. The three objecting defendants, grandchildren of the trustor, are children of a deceased beneficiary. They will be hereafter referred to as defendants or by name: Moore, Campbell and Buck.

The trial court construed the terms of the will which established the trust and approved the petition of the trustees and made other incidental orders necessary to a complete determination of the issues. The three defendants (contingent beneficiaries) appealed from the judgment and the order overruling their motion for new trial. The trustees cross-appealed from the trial court's order allowing attorneys' fees to counsel for the three defendants and from the order overruling motion for new trial as to that issue.

The three defendants made eight assignments of error which will now be dealt with in the order presented.

First. Two of the defendants, Moore and Campbell, claim that the trial court erred in overruling their motion consisting of a special appearance and denial of jurisdiction. Defendants Moore and Campbell are citizens and residents of California. No summons was issued to or process served on any of the defendants. Prior to a hearing on the merits of the matter, the court found that defendants Moore, Campbell and Buck were not necessary parties to the action and overruled the motions of the defendants Moore and Campbell as stated above and allowed them to file answers. Defendant Buck filed his answer and appeared by counsel. The other contingent beneficiaries, all of whom were grandchildren or great-grandchildren of the trustor, did not file answers but appeared in court by their attorney. We have previously decided a case in which contingent beneficiaries of a trust made the same complaint that is being made by the appealing parties in the instant case. In that case, Hurst v. Kravis, Okl., 333 P.2d 314, 317, we decided adversely to the contentions of the appealing defendants and said:

"The minor contingent beneficiaries were not designated by name and were designated as a class and were not receiving any distribution from the trust and although they were parties to

the action they were not necessary parties under the provisions of Title 60 O.S. 1951 § 175.23, subd. C, a section of the Oklahoma Trust Act providing jurisdiction to District Courts to construe trust instruments:

" 'Actions hereunder may be brought by a trustee, beneficiary, or any person affected by the administration of the trust estate. If the action is predicated upon any act or obligation of any beneficiary, such beneficiary shall be a necessary party to the proceedings. The only necessary parties to such actions shall be those persons designated by name in the instrument creating the trust, and any persons who may be actually receiving distributions from the trust estate at the time the action is filed; contingent beneficiaries designated as a class shall not be necessary parties.' "

■ We believe that the relative positions of the parties in the Hurst case, supra, were almost identical with parties in this case, and that the trial court in the instant case was therefore correct in its finding that the defendants were not necessary parties although they were allowed to appear and present their objections to the trustees' petition.

■ Second. Defendants Campbell and Moore assign as error the trial court's refusal to grant their motion for continuance for a reasonable time so that they could be present to assist counsel at the hearing on the trustees' petition. Defendants cited Beck v. Peard, 183 Okl. 195, 80 P.2d 614, 615, as being in point. In that case the defendant Beck lived in California and presented an affidavit for continuance which stated that by reason of other litigation which he had pending in the courts of California he would be unable to be present. In that case this Court said:

" * * * There is no statute which specifies the necessary averments of an application for continuance on the ground of the absence of a party as

such. Under Sec. 396, supra, [12 O.S. Supp. 1959 § 667] a continuance upon such ground may be granted 'for good cause shown' and 'upon terms as may be just.' Therefore the rule by which we are governed, as called to our attention by plaintiff, is that where a continuance is sought on account of the absence of a party to the action, unless it clearly appears that the court abused its discretion in overruling the motion for such continuance, this court will not disturb the action of the lower court. Lynch v. Peterson, 1923, 91 Okl. 28, 215 P. 617; Sherman Machine & Iron Works v. Cole Mfg. Co., 1915, 51 Okl. 353, 151 P. 1181.

"In determining whether the trial court abused its discretion there are two considerations. First, did the defendant give a sufficient reason for not being present at the trial? and, second, assuming that he did, was his presence as a party necessary?"

■ In that case the Court answered both questions in the affirmative. In the present case we believe that the trial court did not abuse its discretion in overruling the motion for continuance because the defendants gave no reason for their absence except that they resided in California. Furthermore, we have just stated that they were not necessary parties. See also 17 C.J.S. Continuances § 27, p. 211, which states that it is not ordinarily considered essential for a party to be present to assist his counsel at the trial of a cause unless other reasons are shown.

Third. Defendants contend that the trial court failed to properly interpret the will of the decedent which established the trust. The defendants divide this contention into four parts which we will discuss separately.

(a) Defendants say that the trustor created two separate trusts and neither was to be invaded by the other. Excerpts from the will are quoted in defendants' brief to support this theory, but no cases are cit-

ed to bear it out. We. do not believe that the language of the will can be construed as establishing two trusts.

(b) Defendants next state that the wishes of the trustees, life income beneficiaries and other contingent beneficiaries should not control and cite Hill v. Hill, 49 Okl. 424, 152 P. 1122, as being a similar case. The cited case merely holds that where the purposes of an active trust are not fully accomplished and there are no obstacles in the way of its complete performance, the beneficiaries cannot by agreement terminate the trust and take title to the property. The case does not appear to be in point for the reason that the trustees and beneficiaries in the case at bar are not attempting to avoid the trust but, on the contrary, have sought the help of the district court in interpreting the language to give proper effect to the trust instrument.

(c) Defendants state that the trial court disregarded its judgment entered June 22, 1953, which construed the same trust provisions that are involved in this proceeding. The judgment referred to by the defendants was one allowing the trustees to make improvements on the Hales Building which was part of the trust property, to execute a mortgage on the Hales Building property, and to use the income from the Hales Building property to retire the obligation. It is noted that, although the Hales Building property and the property now involved are located side by side in downtown Oklahoma City and were at an earlier stage of the trust administration all included as property of the Hales Building and Investment Company (a corporation which has since been dissolved), the provisions in the will relating to the repair and upkeep of the Hales Building property are different from those relating to the erection of a new building which is involved in this action. If the trial court were dealing with the Hales Building property in this action, it would be necessary to consistently follow the pattern established in the 1953 judgment. Since, however, the court was here treating of another part of the trust property as to which specific provisions were made, we do not believe it necessary for the trial court to require the same financing arrangements as those set out in the 1953 judgment.

The trust provisions of the will which are pertinent to the present case are found in the third grammatical paragraph of the eighth clause as follows:

"If I have not in my lifetime caused Lots Three (3) and Four (4) in Block Thirty-five (35) in Oklahoma City in the County and State of Oklahoma, to be improved by the Hales Building and Investment Company by the erection of a new building thereon, and I authorize and empower said trustees, whenever in their judgment they deem it to the best interests of said trust estate, as sole owners of the capital stock of said corporation, to cause to be erected a good and substantial fireproof modern building of suitable height and material on said lots, then to use the funds of said trust estate for that purpose, or if they deem it best to loan from said funds to the said Hales Building and Investment Company the moneys necessary to erect said building and if the said Hales Building and Investment Company shall have been dissolved and liquidated before such building is erected then such trustee may proceed to erect the same and pay therefor out of money and funds of said trust estate. And if there be not sufficient available funds in said trust estate to pay in full for the construction of said building on said lots when said trustees shall have decided to construct the same then they are empowered to mortgage said lots for not exceeding one-half the cost of the construction of such building which mortgage shall provide for the payment of the principal sum so borrowed and secured in ten or more equal annual installments and these shall be met and paid out of the income from the said Hales Building and the said new building constructed on said Lots Three (3) and Four (4) in so far as possible. * * *"

Defendants contend that the word "funds" as used by the trustor meant cash and since there was not sufficient available cash in the trust estate to pay in full for the construction of the building then the trustees should mortgage the lots and repay the loan out of income from the Hales Building and the new building. We believe that defendants are limiting too closely the meaning of the word "funds." In Black's Law Dictionary, Fourth Edition, p. 802, we find:

"Fund, n. A generic term and all-embracing as compared with term 'money,' etc., which is specific. Bivins v. State, 47 Ga.App. 391, 170 S.E. 513, 516.

\* \* \* \* \* \*

"In the plural, this word has a variety of slightly different meanings, as follows:

"Moneys and much more, such as notes, bills, checks, drafts, stocks and bonds, and in broader meaning may include property of every kind. State v. Finney, 141 Kan. 12, 40 P.2d 411, 421.

\* \* \* \* \* \*

"Corporate stocks or government securities; in this sense usually spoken of as the 'funds.'"

■ There were sufficient funds available in the trust estate in the form of cash, government bonds and other securities to pay in full for the construction of the new building. Therefore there was no reason for the trustees to mortgage the lots under the terms of the will. And the 1953 judgment concerning the Hales Building was not applicable to the erection of a new building under the express terms of the will.

(d) The defendants say that the trial court disregarded other provisions of the trust and point to a part of the will which authorized the trustees to invest funds of the trust estate "in the same class of securities in which the State School Land Commission of the State of Oklahoma is authorized by law to invest the school funds of said State, and preferably in first mortgages on improved real estate at not more than fifty percentum of the fair market value of such real estate, United States Government bonds or high class municipal bonds, or in such other dividend paying or interest bearing investments as said trustees may deem absolutely safe and secure, the safety of such investments to be considered rather than the rate of interest to be paid or of dividends to be expected."

■ We understand the above quoted portion of the will to be a general statement of the trustor's intent as to the manner of selecting investment opportunities for trust funds when an investment was not otherwise provided for. As was shown earlier in this opinion the investment of trust funds in the erection of a new building was expressly authorized.

■ Fourth. Defendants say the trial court should have required the sale of the two lots or the repair of the existing buildings thereon. Defendants say that 60 O. S.1951 § 175.35, provides that whenever trust property has not produced an annual net income of at least one per cent per annum of its market value the trustee is under a duty to change the form of the investment. Defendants then go on to say that the evidence showed that for the one year period prior to the hearing the two lots failed to produce net income in the amount of one per cent. In truth the evidence showed that up until eleven months before the hearing the income was the same as it had been for years, which was substantially in excess of one per cent per annum. The evidence also shows that the trustee investigated various ways of making the property again productive before deciding on the method under attack by the defendants. The change of the form of the investment by the erection of a new building was approved by the trial court less than one year after the lots became unproductive. We believe that the trustees acted reasonably and within the time provided in the statute cited by defendants and therefore the trial court was correct in re-

## 230

fusing to require the trustees to sell the two lots. It may be noted, too, that the complaint made by the defendants is one which, if proper at all, would be made by the life beneficiaries who would receive or fail to receive income based on the trustees' efforts in keeping the trust estate productive of income. As stated above the life beneficiaries, children of the trustor, joined in asking that the trustees' petition be approved.

The defendants next say that if the lots were not required to be sold, then the old buildings on them should have been repaired and rented. Both the trustees and defendants placed into evidence estimates of costs of repair and opinions as to its feasibility. We do not believe the trial court erred in failing to require the trustees to repair and rent the existing buildings.

■ Fifth. Defendants contended that the trustees should have been removed because of their past wrongful conduct toward the defendants. They cite Mertz v. Owen, 191 Okl. 77, 126 P.2d 720, 725, in support of this contention. In the cited case this Court affirmed the trial court's finding that evidence showed open hostility on the part of the trustee toward some of the beneficiaries and that it justified the removal of the trustee upon request by the affected beneficiaries. The defendants in their brief in the instant case point to past events during the administration of the trust when one or more of them have been required to seek court action to cause the trustees to perform certain duties. We do not believe that any of these instances evidence an open hostility toward defendants. In the main they appear to us to be more in the nature of overcautiousness on the part of the trustees in expending trust funds. Such conservative handling of funds may finally result to the advantage of defendants who are contingent beneficiaries. In any event defendants made no strong showing of causes for removal of the trustees. In this connection we said in the Mertz case, supra:

"All of the authorities recognize that courts have the power to remove a trustee for cause. Bogert, Trusts and Trustees, Vol. 3, § 519, p. 1650; 65 C.J. pp. 614, § 445; and 26 R.C.L. pp. 1276, § 126. While all of the authorities agree in recognizing the power of courts to remove trustees, these same authorities are quick to point out that no trustee should be removed except upon the strongest showing with respect to the charges made and only for the purpose of preserving or protecting the trust estate from loss or serious harm."

The defendants in their answer filed in the trial court advanced no reasons for their demand that the trustees be removed. The trial court made no specific finding except that the trustees were the authorized and acting trustees. We do not believe that the finding was against the weight of the evidence. This was a matter largely within the discretion of the trial court.

Sixth. The defendants state that (a) the trial court should not have authorized liquidation of conservative investments; but (b) if it did, then an amortization fund should be set up.

■ (a) As we stated above in discussing the defendants' third proposition, the will which created the trust provided that trust funds could be used to pay the cost of erecting the new building. This implies the liquidation to money of conservative assets for the purpose of paying the cost of the new building.

(b) Defendants contend that an amortization fund should have been required out of income which would preserve the principal intact for the contingent beneficiaries.

■ The authorities seem to be fairly uniform that when funds from the trust principal are authorized to be used for payment of the cost of a permanent improvement, there is no need to provide for an amortization fund or reserve for depreciation to be paid out of income. Since trust principal is used to pay for the permanent improvement, the result is that the life beneficiary loses the income on the amount of principal so paid. The principal has

simply been changed from one form to another and the life beneficiary receives the income from one form instead of another. Scott on Trusts, 2nd Ed., Vol. III, § 233.3; Bogert, Trusts and Trustees, § 803. This rule is stated and illustrated in Restatement of the Law of Trusts, Second, § 233, Comment *k*, as follows:

> "*k. Permanent improvements.* If the improvements are permanent in character, the principal is benefited, the effect being merely to substitute one form of principal for another. It is therefore fair that the cost for improvements should be paid for out of principal without amortization. While the beneficiary entitled to the income may receive a benefit from the improvements in the form of increased rentals, this is balanced by the fact that he no longer receives income from that part of the principal which is expended in making the improvements.

> "Illustrations:

> "4. A devises and bequeaths the residue of his property to B in trust to pay the income to C for life and on C's death to convey the principal to D. On a piece of land which is a part of the residue is an old untenantable building which B tears down and in place of which he erects a new building. The cost of the improvement is $10,000. This expenditure is chargeable to principal."

Seventh. Defendants contend (a) that the trial court failed to allow defendants' counsel sufficient attorneys' fees, and (b) that the trial court should not have allowed a real estate commission to be paid from the trust principal.

(a) We will discuss the trustees' contention that the defendants' counsel should have been denied attorneys' fees altogether, before discussing the amount allowed.

 ██ The trustees cite Crews v. Willis, 195 Okl. 475, 159 P.2d 251, and Buck v. Cavett, Okl., 353 P.2d 475, which state the rule that attorneys not employed by the trustees shall not be allowed attorneys' fees out of the trust estate, except when the services were performed for the purpose of protecting and preserving the trust estate and in the interest of the beneficiaries generally. This is favorable to the defendants in this case because the services performed appear to fall within the exception to the rule as set out. Here the defendants in good faith brought to light pertinent information from trustees' witnesses and presented expert witnesses of their own in an attempt to show the court that the proposal in trustees' petition for instructions was not the best method of protecting and preserving the trust estate and that the proposal was not in the interest of contingent beneficiaries as a class. The trial court's findings were based on the evidence presented by defendants as well as that presented by the trustees, and we do not believe that the fact that defendants were unsuccessful in blocking the trustees' plans should be a reason for denying them attorneys' fees. Since the trustees were unwilling to liquidate trust funds and proceed with the erection of a building unless authorized by the trial court, they can hardly be heard to say that the outcome was so certain as to make unnecessary a contest by the defendants.

Concerning defendants' claim that the amount of attorneys' fees was grossly inadequate, we must state that it was within the discretion of the trial court to fix a reasonable fee and in doing so to take into consideration certain factors. In the similar case of Re Atwood's Trust, 227 Minn. 495, 35 N.W.2d 736, 741, 9 A.L.R.2d 1126, the Minnesota Supreme Court laid down the applicable rules as follows:

> "It is the duty of courts in fixing reasonable attorneys' fees as a charge against the trust corpus to protect trust estate from 'vicarious generosity.' In determining the reasonableness of attorneys' fees, the character, ability, and experience of the attorneys, the amount involved, the time necessary to prepare for trial, the responsibility

assumed in connection therewith by counsel, the difficulties of the propositions involved, the results obtained, and the amount customarily charged for service of like character are all to be considered. Hempel v. Hempel, 225 Minn. 287, 293, 30 N.W.2d 594, 598; Blackhurst v. Johnson, 8 Cir., 72 F.2d 644, 648."

Based on these principles and in light of the evidence presented, we believe that the allowance made by the trial court to the defendants' attorneys was reasonable and proper. The trial court, however, failed to allow defendants' attorneys' request for expert witness fees, which request being undisputed as to reasonableness or necessity, appears to us to be as reasonable as that for attorneys' fees. Since the defendants did not call as witnesses all of the ones for whom they requested witness fees, we feel that an allowance of $300 is reasonable and proper and should have been allowed by the trial court to defendants' attorneys from the trust principal in addition to attorneys' fees already allowed and approved. We believe, too, that defendants' counsel should be allowed additional attorneys' fees for their services on this appeal. A reasonable fee of $500 to the attorneys for Moore and Campbell and $500 to the attorneys for Buck, making a total of $1,000, should be paid from the trust principal in addition to those fees and expenses approved above.

■ (b) Defendants contend that the real estate brokers' fees or commission incurred for the negotiation of the lease on the new building should not have been allowed to be paid from the trust principal. The trustees attempt to support this part of the trial court's order by citing 60 O.S. 1951 § 175.36, subd. B, which provides that the cost of investing or reinvesting principal shall be paid out of principal. The trustees cited several cases from other jurisdictions which approved payment from principal of broker's fees incurred in either buying or selling trust assets. We do not agree with the trial court in this respect, nor do we agree that the trustees' citations are in point. This appears to be a necessary expense of operating the property rather than a cost of reinvesting principal. The will which created the trust provided that the income should first be applied to prompt payment of necessary expenses of operating the property. Because the brokers' fees have already been paid from the trust principal, we hold the fees, which are in the amount of $18,000, be returned to trust principal from trust income. Since it is a large or unusual amount, trustees may distribute the repayment equally over the 20 year life of the lease. This is authorized by 60 O.S.1951 § 175.36, subd. C.

■ Eighth. Defendants' final contention is that the trial court improperly made its findings of fact and conclusions of law. The defendants submitted requested findings of fact and conclusions of law which were refused by the court. After the hearing and before the final order was entered in this matter the trial court made five findings of fact and three conclusions of law. We do not find it necessary to review the findings of fact and conclusions of law given and refused because the statute, 12 O.S.1951 § 611, was substantially complied with and the findings made cover the material issues presented on conflicting evidence. Loflin v. Capps, Okl., 327 P.2d 443.

The judgment is therefore affirmed except as to that part which provides that real estate brokers' fees be paid out of trust principal and as to that part denying defendants' counsels' request for expert witness fees. As stated above, it is hereby directed that real estate brokers' fees are to be paid from the trust income and the trustees may distribute the payment over the 20 year life of the lease. It is further directed that defendants' counsels' request for expert witness fees be allowed in the amount of $300, and that additional attorneys' fees in the total amount of $1,000 be allowed to defendants' attorneys.

Affirmed in part and reversed in part with directions.

WILLIAMS, C. J., and JOHNSON, JACKSON, IRWIN and BERRY, JJ., concur.

BLACKBIRD, V. C. J., concurs in result.