K. CAVETT, The First National Bank and Trust Company of Oklahoma City, Trustees under the Last Will and Testament of W. T. Hales, Deceased, W. T. Hales, Jr., George Hales and Viva Peterson, Plaintiffs in Error,

v.

Allen Hales BUCK, Defendant in Error.

No. 40922.

Supreme Court of Oklahoma

Dec. 22, 1964.

902

Fowler, Rucks, Baker, Jopling, Gramlich & Mee, Lytle, Soule & Emery, Oklahoma City, for plaintiffs in error.

John H. Kennedy, Oklahoma City, for defendant in error.

DAVISON, Justice.

This is an appeal by K. Cavett and The First National Bank and Trust Company of Oklahoma City, Trustees (defendants below) and W. T. Hales, Jr., George Hales and Viva Peterson, intervenors below), from a judgment in favor of Allen Hales Buck (plaintiff below) ordering the trustees to pay to plaintiff larger monthly payments and certain indebtedness of plaintiff, from the income held and received by them as trustees of the testamentary trust of W. T. Hales, deceased. In Buck v. Cavett, Okl., 353 P.2d 475, we disposed of

a prior controversy between plaintiff and the trustees involving plaintiff's earlier application for payment from the trust.

The will of W. T. Hales with trust provisions is dated November 13, 1935. Testator died September 15, 1938, leaving 5 children, consisting of the intervenors, and another daughter and plaintiff's mother, both now deceased. Plaintiff's mother died in 1941 and under the terms of the will did not participate in four later substantial distributions of a part of the trust funds, and such undistributed portions remained in the corpus of the trust, to be distributed at the termination of the trust. In general the trust will terminate on the death of the last survivor of testator's children, with distribution to his grandchildren. In the interim the yearly net income of the trust, after payment of certain stipulated amounts, is to be distributed to testator's then living children.

The portion of the trust instrument presently applicable to plaintiff states:

"Whenever any of my children shall have died leaving surviving him or her any child or children, then I authorize, empower and direct my executors and said trustees to make payments from the income of my estate during administration, and of said trust estate thereafter, at such times and in such amounts and to such persons as in the exercise of a wise discretion and the best judgment of said executors or trustees they shall deem reasonably necessary, just and proper for the care, maintenance, support and education of each such grandchild of mine, including a high-school and college education to each one who will take it, * * *".

The record in the prior proceeding that was before us in Buck v. Cavett, supra, was introduced in the present proceeding. As a result of that decision the lower court, on September 30, 1960, directed the trustees to pay plaintiff $145.00 per month effective from February 15, 1958, that being the date of plaintiff's demand upon the trustees. That sum, plus $145.00 from another trust created by the same trustor, resulted in plaintiff receiving $290.00 per month. Later the amount from the other trust was increased to $200.00 and plaintiff has been receiving a total of $345.00 per month for some time. The provisions and funds of the other trust are not here involved.

In July, 1963, plaintiff made demand on the trustees for funds to pay his accrued indebtedness and same was later denied. In December, 1963, plaintiff filed application for an order directing the trustees to increase the payments from $145.00 to $500.00 per month and to pay plaintiff's accrued debts in the alleged sum of $5000.00. Later the application was amended to ask for $650.00 per month.

By judgment dated February 13, 1964, the lower court ordered payment of $700.00 to a Florida psychiatrist (Dr. W) for professional services to plaintiff; payment of $2031.35 accrued debts of plaintiff; payment of $2635.00, calculated from $500.00 monthly, retroactive to July, 1963, and $650.00 for January, 1964, less monthly payments already made by trustees; and $650.00 beginning February 1, 1964, for the care, maintenance, and support of plaintiff "and his family." From the above cumulative sums the court directed payments of $2683.18 to plaintiff's attorney for his services. The court further ordered the trustees to pay monthly to the psychiatrist, Dr. W, his charges for professional services to plaintiff and that such fees be in addition to the $650.00 payments to plaintiff. In its findings the court found, inter alia, that "care, maintenance and support" of plaintiff included his family; that plaintiff was mentally and emotionally incompetent to support his wife and family; and that he should receive psychiatric treatment.

The record reflects that in September, 1959, being after the hearing presented in Buck v. Cavett, supra, the plaintiff married and about a year later in Florida legally adopted his wife's three children, whose ages were then about 13, 12 and 10 years. Two additional children have been born

from this marriage. This constitutes the plaintiff's family considered by the lower court. It appears that plaintiff and his family have mostly lived in Florida, but have also lived in Arizona and New Mexico. He had worked at numerous jobs during the previous 4 years and had been unemployed for periods totaling about 20 months.

The testimony as to plaintiff's mental condition included that presented at the first hearing and a portion thereof appears in Buck v. Cavett, supra. Such evidence at the present hearing was of similar import. The cumulative opinion of all this expert opinion appears to be that plaintiff cannot or will not adjust to persons or situations, and that this accounts for his inability to keep steady employment, but that plaintiff will benefit from proper treatment. We note also that plaintiff last sought help shortly before filing the present application.

There is some evidence that plaintiff's condition had become worse than it was when his application was considered and later determined in Buck v. Cavett, supra.

The trustees and intervenors contend that under the terms of the trust the discretionary care, maintenance and support is applicable only to plaintiff and does not extend to his family.

■ The intention of the creator of the trust, as gathered from the terms of the trust instrument, controls the disposition of the income arising from the trust property, and all the provisions of such instrument are to be considered. 90 C.J.S. Trusts § 353a; 96 C.J.S. Wills § 1031; 54 Am.Jur., Trusts, Sec. 150.

■ In Buck v. Cavett, supra, this court held that the discretion of the trustees of the trust, relative to the reasonably necessary care, maintenance and support of the beneficiary, must be exercised honestly, fairly and reasonably to accomplish the purpose of the trust.

■ In addition to the above quoted portion of the testamentary trust the instrument provided in part that no right in praesenti is intended to be conveyed to any of the beneficiaries; that no title, legal or equitable, and no beneficial interest is vested, or shall vest, in any beneficiary, until payment and distribution thereof is made and that they shall have no assignable interest; and that the beneficiaries "shall be entitled only to the benefits flowing from the express terms and conditions of said trust, * * * it being the purpose and intention of this trust to create a fund for payments to the beneficiaries thereof for their individual support and maintenance, * * *."

The trust instrument and in particular the last quoted language, when applied to plaintiff, must of necessity be interpreted as limiting the money furnished to plaintiff at the discretion of the trustees to an amount deemed reasonably necessary to the individual care, maintenance and support of plaintiff. At the time of the preparation of the trust instrument (November, 1935) and the death of the trustor (September, 1938) the plaintiff grandson was about ages 3 years and 6 years respectively. Under the circumstances and in the absence of some appropriate language it would be mere conjecture that trustor even contemplated the trust would assume or be charged with plaintiff's obligation to support a family resulting from plaintiff's then distant marriage.

It should be pointed out that our discussion and conclusion herein regarding the family of plaintiff is limited to the proposition of whether such fact, in the present situation, should influence or be considered by the trustees in exercising their discretion to pay, or how much to pay, to plaintiff for his care, maintenance and support. This is not a case where the wife or child of a beneficiary is seeking support from the income of the trust pursuant to 60 O.S.1961, § 175.25.

In support of our conclusion herein we cite Burrage v. Bucknam, 301 Mass. 235, 16 N.E.2d 705, in which the court, after having previously refused to decide the question (Bucknam v. Bucknam, 294 Mass.

214, 200 N.E. 918, 104 A.L.R. 774), passed on the sole proposition of whether the terms of the testamentary trust should be construed to include support of the former wife and child of the beneficiary because of their dependence upon him. The determination was made completely separate and apart from their rights as creditors and assignees of the beneficiary. The pertinent language on the trust states:

> "* * * When my said son reaches the age of twenty-five years the trustee shall pay over to him semi-annually or oftener in their discretion the net income of said trust fund until he shall reach the age of thirty years and thereupon shall pay over to him the principal of said trust fund free and discharged of all trusts. * * *"

The court said:

> "* * * As the elder Mrs. Bucknam was disposing of her own property and could choose her own beneficiaries and was under no obligation to include her son's family among them, this case is to be decided solely upon the construction of her will, and that is to be ascertained in the usual way by reading her intention from the language which she used in the light of the circumstances then existing.

> * * * * * *

> "We are not convinced that the straightforward and unqualified direction to pay the income to Robert Horton Bucknam can be construed to mean that part of the income shall be paid to his former wife or to a guardian of his child. Neither the wife nor the (then unborn) child is mentioned anywhere in the will as the recipient of such payments. To read their names into this clause of the will is to do violence to the plain words of the testatrix. Payment to a wife or child is not commonly regarded as satisfying an obligation to pay a husband or father, where there is no relation of agency. * * *"

The wording of the testamentary trust in the instant appeal, providing that the only benefits to plaintiff are governed by the "express terms and conditions of said trust" and that payments to plaintiff is for his "individual support and maintenance," is even stronger than that in the cited case.

In support of the lower court's judgment the plaintiff cites Scott on Trusts, Vol. II, Sec. 128.4, p. 942, as follows:

> "Where a trust is created for the support of a beneficiary, and the beneficiary is a married man, the inference is that he is entitled to receive enough to support his wife and minor children also. * * *"

and cases cited thereunder as authority for the quoted statement: Bridgeport-City Trust Co. v. Beach, 119 Conn. 131, 174 A. 308; Robison v. Elston Bank & Trust Co., 113 Ind.App. 633, 48 N.E.2d 181, 49 N.E.2d 348; Eaton v. Lovering, 81 N.H. 275, 125 A. 433; Rhode Island Hospital Trust Co. v. Egan, 52 R.I. 384, 161 A. 124; Fowler v. Hancock, 89 N.H. 301, 197 A. 715; Robinson v. Robinson, 173 Misc. 985, 19 N.Y.S.2d 44.

These decisions are distinguishable. Without conceding the correctness of the statements or conclusions given therein in support of the quoted authority, supra, there is present in each trust or situation some element or circumstance not present in our case, such as: "comfortably" support a then married son; net income to be devoted solely to support, maintenance and "enjoyment" of a then married nephew; for benefit of son and his "needs may require" (son being then married); where will showed testator anticipated son would marry and live in testator's residence; "benefit" of then married brother; and care and support of a married son. None of the trusts limit the support and maintenance to the individual beneficiary.

It is our conclusion that the present trust provisions for discretionary care, maintenance and support of plaintiff cannot be construed to include his wife and children.

The trustees and intervenors further contend that the lower court's allowance of an increase from $145.00 to $650.00 per month is, under the evidence, grossly excessive. Their contention that the lower court erred in finding plaintiff's health had deteriorated since our decision in Buck v. Cavett, supra (June 21, 1960), must be considered in connection therewith.

The Florida psychiatrist, Dr. W, makes no comparison as to plaintiff's present condition and his condition at the prior trial. His conclusion is that plaintiff's condition is "precarious in terms of his mental stability." The Oklahoma psychiatrist, Dr. G, states plaintiff suffers from the same condition that previously existed; that his condition was worse when he first saw Dr. W; that his financial plight and increased family responsibilities have aggravated his illness to a great extent; that he is healthily motivated for treatment; and that he is not legally incompetent.

■ It is our conclusion, after examining the record, that the increase of payments to plaintiff from $145.00 to $650.00 per month is excessive and unwarranted. There is no claim that the trust income is insufficient, and it does appear that the trust has ample income to pay an increased amount to plaintiff. It is our opinion that the exercise of an honest, fair and reasonable discretion requires an increase in payments from the trust to plaintiff, from $145.00 to $300.00 per month, as reasonable provision for plaintiff's housing, food, medical care and other necessities, retroactive to the 1st of July, 1963, and less all payments made to plaintiff by the trust during such period. The above payments to be in addition to those received from the other trust.

■ No contention is made that Dr. W's unpaid charge of $700.00 for prior services rendered plaintiff or the witness fee of Dr. G, are improper, unfair or unreasonable, and we find nothing in the record to that effect. The judgment in this respect is affirmed, but that portion thereof requiring the trustees to pay Dr. W's subsequent and future charges is reversed.

The court further concludes that the portion of the judgment directing the trustees to pay $2031.35 for indebtedness of plaintiff incurred prior to July 1, 1963, is excessive and unjustified. It is accordingly reversed.

■ Trustees and intervenors further contend that the trial court erred in directing payment of plaintiff's attorney fee.

The judgment directed payment of $2683.18 to plaintiff's attorney out of the total amount of $4666.35 allowed by the trial court for payment of debts ($2031.35) and retroactive payments to plaintiff ($2635.00). The direction of payment of plaintiff's attorney fee out of the amount recovered by plaintiff is obviously not a separate and additional allowance of such fee out of or chargeable to the trust estate. Apparently plaintiff was agreeable to payment of such fee from the amounts allowed him. Examination of the above figures reveals some small part of the attorney fee was by intent or miscalculation included in the allowed debt portion. This was contrary to our conclusion in Buck v. Cavett, supra, in which we held plaintiff's action was to protect and preserve his own interest in the trust by recovering that claimed by him, and he was not entitled to counsel fee.

In view of our modification of the trial court's allowance to plaintiff, the attorney fee, to the extent that it affects any disbursement of trust funds, must of necessity be vacated for further action of the trial court upon remand of this cause to such court.

Reversed in part and modified in part with directions to proceed in accordance with the foregoing conclusion.

BLACKBIRD, C. J., HALLEY, V. C. J., and JOHNSON, WILLIAMS, JACKSON, IRWIN and BERRY, JJ., concur.